that is at issue in this appeal, which is what standard one must meet to plausibly allege that the fiduciaries of an employee's stock ownership plan have violated ERISA's duty of prudence by failing to act on inside information. In the course of answering that question, this court went out of its way to emphasize that no heightened pleading standard applies to duty of prudence claims just because they involve an ESOP. Instead, all that's required is enough to provide the context that's necessary to show a plausible claim for relief. And at the pleading stage, this court made clear that district courts must keep in mind that the standard is plausibility, not likelihood or certainty, and are required to draw all inferences in the plaintiff's favor, just as they would in any other ERISA case. The district court failed to heed these lessons here. For duty of prudence claims that allege that the defendants acted imprudently because they specifically identified five key facts that, if alleged, are sufficient to plausibly state a claim. And Judge Katzmann's opinion and gender helpfully lists out these five facts one by one, and I'm happy to address all of them, but with the court's indulgence, I'd like to focus on the last of these key facts, an allegation that disclosure was inevitable, because the defendants have all but conceded that the other four are satisfied here, and they've for dismissal principally on the theory that disclosure was not inevitable. But contrary to what the defendants say, the complaint specifically and precisely alleges that disclosure was inevitable, and here I'd like to point this court right to the allegations in the complaint that do this. They're found in paragraphs 82 through 85 on pages 27 and 28 of the joint appendix. And they state very clearly that, and I'm going to quote right from them here, quote, the defendants were going to have to disclose the billions of dollars of underfunded insurance liabilities and would be unable to hide the problem because they inevitably would have to fund the insurance subsidiaries with billions needed to make policyholder claims as they came due. Now this is an allegation of inevitability, but it's not the only one. If the court looks just one paragraph below that allegation, you'll see another one. The very next paragraph, the complaint added a specific fact to support the claim that disclosure was inevitable, and again, I'm just going to quote from it. It says that, quote, other insurers with underfunded long-term care liabilities inevitably had to disclose the problem. This is, again, on the same page as the other allegation in the joint appendix, and it offered two concrete examples of other major companies that around the same time were forced to disclose that they too had massively miscalculated their long-term care liabilities. That's significant because other companies could not conceal the same problem. It further tips the scales in favor of plausibility that the same was true for GE. And once nondisclosure is no longer the relevant point of comparison, a prudent fiduciary would have to conclude that disclosure could only help not hurt the plan. Now, the defendants say that even this isn't enough to plausibly establish that disclosure was inevitable, but taken together with the other relevant allegations in the complaint explaining why prompt disclosure of corporate fraud minimizes harm rather than increases it, that allegation is more than enough to state a claim under JANDR. And the reason that's true comes right from JANDR itself. In this context, as this court explained in that opinion, alleging that disclosure is inevitable is crucial because it meaningfully changes the nature of a prudent fiduciary's about whether disclosure would, as Justice Kagan put it, be more likely to help rather than to harm. Counselor, I'd like to ask you a couple of questions about the status of JANDR. If we follow JANDR, you might prevail in this case. After the Supreme Court sent JANDR back to the panel, and this case decision came out after vacated and remandered, before the Second Circuit reaffirmed, that's when this decision came out and sent it back. What's pending now is another petition for cert. Is that correct? Yes, that's correct, Your Honor. So the fiduciaries in JANDR have filed a second cert petition after this court reinstated its original decision in JANDR. And of course, the district court in this case essentially treated JANDR as no longer good law once the Supreme Court accepted the petition for certiorari in the first round. It didn't analyze the rationale or the reasoning that this court applied to move that case forward. It may have been premature on the part of the district court to assume that JANDR was not good law. Right now, we must assume that it is until the Supreme Court says otherwise. That is your position? That is our position, Your Honor. And if we follow JANDR, you think your allegations are similar enough that you would prevail in this case? Yes, Your Honor. And again, there were five key facts that JANDR identified as sufficient to state a claim in this context. And this complaint in our case contains exactly those five allegations. It's actually stronger. Wait, wait, wait. It's not it's not exactly the same because isn't in JANDR the the key thing I thought that made disclosure inevitable was that the parent company was trying to sell off the subsidiary so that the disclosure would come out in the course of due diligence in that situation. That's not the case here. Right. That's correct, Your Honor. Now, the specific I mean, the specific context in which inevitability in which the complaint alleged inevitability in JANDR is different from the context in which the complaint alleges inevitability here. Right. So your argument has to focus on what shows inevitability here. And I take it the key thing that you pointed out to us a moment ago is an allegation that GE would have to continue to shell out billions of dollars to prop up these insurance companies. Right. Well, well, there's two allegations. The first is that, yes, that that inevitably these payments would come due billions of dollars in liabilities that they that they were on the hook for regardless. They couldn't avoid those obligations. But the second allegation goes beyond that. And it identifies two competitor companies who were in a very similar position to GE around the same time that were forced to disclose the same problem. Both and both of them went belly up. They imploded precisely because of this long term care liability problem. If I could, Your Honor, just to respond to that one more way, because I think this is actually, to me, the key. If you go and you look at the specific allegation in gender and Judge Katzman cites it, it's in the joint appendix in that case at page 88, there is only one single allegation on inevitability. It's exactly one paragraph. And I'm just going to, with your with your honor's permission, I'd like to just compare it, because I think if this court compares the allegations on inevitability here with the single allegation on inevitability in gender, you'll see what I mean by when I say that. I think the complaint here does a better job, is stronger on this point in gender. And this is a paragraph 111 in in the joint appendix on page 88. The complaint said that the defendants know or should have known. And again, I'm quoting that disclosure of the fraud was going to happen one way or another. IBM had spent almost two years actively seeking a buyer for the microelectronics business. It was more likely than not that the segment would be told which defendants knew or should have known. That's it. Not that not not even a definitive statement or allegation that the sale was was inevitable, just that it was more likely than not that it would be sold. And what the court in gender said was at the pleading stage, that's enough. That's enough to establish a plausible allegation of inevitability. And here, the allegations that that this complaint has on inevitability go beyond that. They're more concrete, not as speculative. And they they they are based on two distinct facts that at the pleading stage, a court is entitled to credit and draw all favorable inferences in the in the in favor of the plaintiff, not the other way around, which is what the district court did here. If I can add to your research, I wanted to say that we'll hear from the samples. Good morning, counsel. Good morning. Thank you, Your Honor. And may it please the court. I'm Jeannie Santos. And with my co-counsel at virtual table, Jeannie Fleckner, I represent the Appleys. I'd like to start where Mr. Wessler left off on the question of inevitability. And first, I'd like to Mr. Wessler said that we conceded that all of the other factors of gender were present. That is absolutely not true. One key factor in gender was that there was no conditions of market uncertainty because the events weren't occurring during a market recession. That is not the case here. Mr. Wessler has tethered all of his arguments to the 2009 and 10 time frame when there were some market uncertainty. But the second point I'd like to make is on this point of inevitability. Just saying the word inevitable in a complaint isn't enough to get across the line of plausibility. A plaintiff said the same thing in SunEdison and in the case against Wells Fargo and Target. But what this court did in gender is looked at whether the disclosure actually was inevitable, according to the allegations. And there are two key pieces of gender that made disclosure inevitable that don't exist here. Number one, the impaired business had had actual certain losses. That had been incurred in the past, and that would come out because something had arisen to make that disclosure no longer that to make nondisclosure no longer a realistic option. And it's what Judge Lynch mentioned, which was the decision to sell the subsidiary. Here we have neither of those things. We are not when we're talking about reserves, we're not talking about invoices for past due amounts. Reserves are essentially projections of or estimates of future potential liabilities that may be incurred years or decades in the future, depending on whether long term claims are filed or not. And even if it were the case that reserve levels were lower than they were supposed to be in 2009 and 10, there are still a whole bunch of factors that could make those reserve levels adequate to cover the future losses. And again, we're talking about liabilities for years and decades in the future. If interest rates go up, if health care claims go down, if you were claims are filed and expected, if Congress passes a universal long term caribou as they floated in the past, all of those things could change the analysis and make it so that the reserves were actually adequate to cover any expected losses in the future. And so a prudent fiduciary faced with that type of uncertainty could easily say, wait a minute, I'm not going to trigger a stock drop when any number of things could play out in the next several years. That would make this no problem whatsoever. And that would be an eminently prudent thing to do. But doesn't it make a difference how rational this prudent fiduciary, how rational his thinking was? Well, your honor, the the Dudenhofer standard is based on a prudent fiduciary, what a prudent fiduciary could or could not have done. And this and the standard is really critical because fiduciaries in any circumstance have a wide range of options available to them. It's not prudence isn't an on or off switch. It's a range. And so that's why what a plaintiff has to do under Dudenhofer is alleged that a prudent fiduciary could not have concluded that taking that alternative would do more harm than good. But plaintiffs argue here that the later it was to be revealed, the worse it would be for the stock. So doesn't that balance your prudent fiduciary who says, oh, I can I can make up the money over time? What they're saying is the longer it took to disclose, the worse it was going to be for the stock. Well, no, your honor, it is correct that I think that's what they're saying, but I don't think that's it's correct that that is enough to satisfy gender. Because remember, in gender, the court said that in the normal case and in the normal case, generalized economic analyses apply. And the court said in the normal case, disclosure isn't going to be inevitable. And so nondisclosure remains a realistic option. It's only when something happens to make nondisclosure no longer realistic that any prudent fiduciary would have to accept that disclosing information and triggering a stock drop would would be the right thing to do. And here, your honor, there's nothing that happened. And again, we're talking about a 2009 and 10 time frame to say that nondisclosure no longer remained a realistic option as in gender when nothing was disclosed for almost a decade later. Just it kind of defies common sense. I'd also like to note these two other insurers that Mr. Wessler pointed to as being really critical. Your honor, there are a dozen of long term care insurers on the market. One of the reports that Mr. Wessler cites on page nine of his opening brief, it's called the state of the presentation on the state of the U.S. long term care industry. It identifies twenty five long term care insurers and those are just the top twenty five. So to say that two out of twenty five long term care books failed doesn't get you even to likely disclosure. It certainly doesn't get you to inevitable disclosure. And while my friend harps on the notion that plausibility is a low bar, remember that that what has to plausibly be alleged is a high standard. And the Supreme Court said it there for a reason. What has to be plausibly alleged is that disclosure is inevitable. And what has to be plausibly alleged is that what the fiduciary did was outside the reasonable range of what a prudent fiduciary could do. And I think one point that's really critical on this, your honor, is that the reason why many of these claims have failed and the claim in SunEdison failed, even though it was allegedly in really bad financial conditions and the same thing with Fleeman Brothers, is that in case after case, the alternative options that the plaintiffs are recommending and that Mr. Wessler proposed here are options that that Dudenhofer itself flagged as enormously harmful. I mean, anyone with common sense would say if a fiduciary discloses inside information, that's going to cause a stock drop and it's going to harm participants. And so when the only options that are proposed are ones that are affirmatively going to harm participants, it should be a rare case that that gets through a motion to dismiss because the first rule I am sure of being fiduciary is do no harm to participants. And here, Mr. Wessler is alleging that the fiduciary should have done things that affirmatively would cause harm. Because their argument, their argument is that putting off the inevitable will just make it worse and will harm the participants even more than disclosing it earlier in their SEC statements. That's right. That is what the plaintiff, that is what Mr. Wessler is arguing. Correct. Isn't that correct? Didn't it cost them a lot when they finally revealed that they were fifteen billion dollars in the hole on the insurance? Wouldn't it have been better when it was three million, three billion or four billion? Well, I think that actually just goes to show what a prudent fiduciary would have been weighing at the time. And remember, we're not judging fiduciaries actions in hindsight. And so you have to put yourself back in the position that fiduciaries would have been in in 2009 or 10 when you're in the in the middle of a great recession. The one thing you know is that if you disclose inside information or close the stock fund with ten billion dollars of planned assets in it, it's going to trigger a stock drop. On the other hand, you have these reserves that even if they were even assuming for purposes of this argument right now, they were actually lower than they should have been in 2009 and 10. You know that there are all kinds of things that could happen between now and when, you know, 2030, 2040, that could make disclosure not inevitable. That's the missing context from gender that's not present here. We're we're not again, we're not talking about losses that have been incurred in real time. We're talking about the gender that talked about inevitability. And doesn't Varga make at least the same claim about inevitability as gender? No. And that's both because of the the lack of some type of event that made nondisclosure no longer a realistic option. And also because of the nature of what we're talking about. They're not existing losses. They're projections of future events. And there's one issue, if I may say in the sentence is what you're saying, essentially, that it's a question of when it's a question of timing, that in gender there's an inevitability that suggests because of what you're pointing out was something that was already on the table that the inevitable, inevitable disclosure is soon. When we say inevitable, of course, we're making a projection and a guess of sorts anyway about the future. But there the time horizon for inevitability was pretty soon here. The argument is sooner or later, things are just going to get worse. And what you're saying is, well, sooner or later covers a lot of time. In this case, it winds up with the benefit of hindsight covering a decade. But no one knows that at the time. And there's not that kind of fact that says the disclosure is inevitable tomorrow or next year or sometime in the near time frame. Is that is that essentially your argument? It's two pronged. We're saying that disclosure was not inevitable at all because these are future contingencies that change based on future events. And we're also saying that it certainly wasn't the case that nondisclosure no longer was a realistic option. There was one other issue I was hoping to briefly address. May I ask? OK, the other point, which is a really critical one, is fiduciary status. If you're suing a fiduciary, if you're suing for breach of a fiduciary duty, you have to sue the fiduciary that had the duty where you alleged was breached. And here, Mr. The plan document is unambiguous on this point. It was the plan trustees that had that authority. And even after we raised this issue in our motion to dismiss, she stood on her complaint and sued two defendants who have absolutely no fiduciary authority to manage plan assets. And this wasn't a mistake, your honors, because the reason why she did this is that if she had sued the plan trustees, there's no way she is. Is this an issue that the district court addressed? This is not an issue that the district court addressed, but it is. So if you're wrong about the principal issue that's raised by the appellant, you have various other arguments that can be raised in the district court. Right. Yes, including the one that you're now you're now addressing. We do, your honor. But the reason why we raise it in this court is that this court has repeatedly called this a threshold question. The court decided Coulter versus Morgan Stanley on this alternative ground before ever reaching the question of breach. And because the unambiguous plan document makes clear and Mr. Wessler doesn't even dispute this really. But again, are you saying that all of the people that he sued, the entire universe of people that he sued comes within come within this argument that you're making now? Yes, your honor. He sued to two entities, GE, which was the plan administrator and had no authority to manage plan assets. And Mr. Amelt, who does not is not even alleged to have been a fiduciary in any capacity. He was alleged to have the power to amend the plan document. And it's been black letter law since Lockheed versus Fink in 1996, that that's not a fiduciary function at all. He has. I understand your answer. Thank you. Thank you, your honor. Thank you, Mr. Wessler. You've reserved some time for rebuttal. Let me ask you first, would it be prudent of this panel to hold this case in abeyance? And so we see if the Supreme Court accepts cert in Janda. I think that this case can be decided without regard to what happens in Janda, but we also wouldn't take the case or if they take the case, they might decide the issue that is central to this case. We wouldn't object to that. We asked, frankly, for this appeal to be held in abeyance originally pending this court's revisit of its opinion on remand. The appeal has now moved forward in our case. But yes, if this court wanted to wait to see if the if the Supreme Court ends up accepting the petition, that would be. I understand that the petition for cert is fully briefed. It is fully briefed. And I would expect some action to be taken within the calendar year on that petition. If I could, your honor, just to make two brief rebuttal. What you heard by and large from my friend on the other side was a merits defense that they didn't think that there was a problem and that and that in their view, a prudent fiduciary would have been OK to wait to see what would happen. But that that puts the cart before the horse. We are at the pleading stage. And if if there was any doubt that the that the allegations in the complaint didn't sufficiently state that there was a problem of of of a nature that would ultimately lead to the disclosure that we saw happen when a new fiduciary came into the plan. I just learned this morning and will be filing a 28 day letter to this court this afternoon that GE's recently filed an 8K alerting the public that the SEC just issued a Wells notice finding after two years of thorough discovery that they're that they are planning to move forward with an enforcement action against the company for precisely the problem that we have alleged existed for the past decade in this company. And we don't have the Wells letter, but we have the 8K notice and we'll put it in front of this court so the court can understand the seriousness and significance of the problem that it existed back then at a point in which no reasonable or prudent fiduciary would have been able to decide that delaying the disclosure for as long as possible was at all a prudent action. And if down the road in this case, it turns out that GE is correct about its view of either the existence or nature of this problem or what a prudent fiduciary would have done, it will win. But at the pleading stage, it doesn't get to come in and assert that all of the allegations that we have included in the complaint are wrong on the merits. That is that is for the next stage in the case. The district court here failed to even grapple with the allegations, which, as I pointed out to this panel, are more concrete than the one single allegation in gender that identified inevitability that the panel and gender relied on. And if you put it all together under gender, regardless of the standard that will ultimately apply, the complaint does enough to state a claim under the lower pleading standards that apply to these kinds of ERISA claims. Thank you, counsel. Any questions, Judge Lynch, Judge Kearse? If not, thank you for your decision. Thank you both very much. And I will.